Jessica L. Blome (Missouri Bar No. 59710)
Lily A. Rivo (California Bar. No. 242688)
(*Pro Hac Vice application pending*)
GREENFIRE LAW, PC
2748 Adeline Street Ste. A
Berkeley, CA 94703
Ph: (510) 900-9502
Email: jblome@greenfirelaw.com
       lrivo@greenfirelaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| THE IOWA FARM SACTUARY, an Iowa non-profit corporation, and SHAWN CAMP, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY OF MISSOURI VETERINARY HEALTH CENTER, by and through CURATORS OF THE UNIVERSITY OF MISSOURI, COLUMBIA, DR. JOAN COATES, D.V.M., in her official and individual capacity, and DR. JANE DOE, D.V.M., in her individual and official capacity, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF** <br><br> **42 U.S.C. § 1983** |

## INTRODUCTION

This civil rights action arises from Defendants University of Missouri Veterinary Health Center, Dr. Joan Coates, D.V.M. and Dr. Jane Doe's negligent, intentional, and wrongful destruction of healthy sheep in June 2023 in violation of Plaintiffs' constitutional rights, enforced through 42 U.S.C. § 1983. On Sunday evening, June 25, 2023, Plaintiffs arrived at the scene of a tractor trailer crash on Missouri Highway 61, just south of Troy, where six sheep with severe injuries were to be shot if not taken by Plaintiffs to receive veterinary care. Plaintiffs Iowa Farm Sanctuary, Director Shawn Camp, and their volunteers and agents did everything in their power to save the injured sheep by rushing them to Defendants' veterinary hospital in Columbia, the closest emergency veterinary hospital in the area. At intake, Defendants required Plaintiffs to pay $1,000 for a pre-treatment deposit for the care of the sheep, and over the next twenty-four hours, Defendants obtained informed consent for all treatment decisions from Plaintiffs. At approximately 12:00 p.m. on Monday, June 26, 2024, Defendants called Plaintiffs to demand additional payment for veterinary treatment for the sheep. Plaintiffs asked for documentation or information regarding the bases for the charges, but Defendants refused to provide any information about the sheep's wellbeing. Confused and worried, Plaintiffs sought the advice of counsel. Defendants then refused to provide Plaintiffs or their counsel any information about the status of the sheep, including whether they were alive, for seven days. Seven days later, Plaintiffs learned that four sheep who were previously expected to recover had been euthanized at the Center the previous Monday, June 26—the same day Defendants demanded additional payment from Plaintiffs for their veterinary care. Defendants' decision to euthanize the sheep and withhold that information from Plaintiffs caused Defendants' extreme emotional distress. Plaintiffs were and continue to be deeply disturbed and injured by Defendants' unnecessary, avoidable killing of these healthy animals.

Through their actions, Defendants have violated Plaintiffs' procedural and substantive right to due process, secured by the Fourteenth Amendment to the United States Constitution as well as Plaintiffs' rights to be free from the unlawful seizure and destruction of property under the Fourth Amendment to the United States Constitution. In addition, Defendants' constitutional

violations have caused Plaintiffs to suffer injuries and damages for which they are entitled to relief under 42 U.S.C. § 1983. Plaintiffs seek declaratory, injunctive, and monetary relief as follows.

**JURISDICTION AND VENUE**

1. Jurisdiction is proper to this Court with respect to Plaintiffs' federal claims arising under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties are citizens of different states; Plaintiffs are Iowa citizens doing business in Iowa and, upon information and belief, Defendant Interim Director Dr. Joan Coates and Dr. Jane Doe are citizens of Missouri. The amount in controversy exceeds $75,000 due to the compensatory, emotional, and punitive damages Plaintiffs seek.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as all of the unlawful acts and omissions of Defendants occurred within the geographical boundaries of this Court and its authority.

**PARTIES**

4. Plaintiff SHAWN CAMP is the Executive Director and co-founder of the Iowa Farm Sanctuary. Director Camp is a resident of the State of Iowa. For decades, Director Camp has dedicated her life to farm animal rescue. Director Camp established the Iowa Farm Sanctuary in 2015 to provide a haven for rescued farm animals in need of love and compassion. Director Camp cares deeply for the wellbeing of animals placed in her care, as do the staff, volunteers, and members of the Sanctuary.

5. Plaintiff IOWA FARM SANCTUARY is a nonprofit charitable organization in business as an "animal rescue" and farmed animal "sanctuary," with its principal place of business located in Oxford, Iowa. The Sanctuary has hundreds of members and supporters, several of whom live in Missouri. The Sanctuary is dedicated to rescuing, rehabilitating, and providing sanctuary to farmed animals who have been injured, neglected, abandoned, or are otherwise in need of help. These animals include sheep, cows, roosters, pigs, and chickens, among

- 3 -
COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

others. The Sanctuary is a permanent home where rescued animals can live out their lives in peace and comfort, free from exploitation.

6. Iowa, and surrounding Midwest states including Missouri, are at the epicenter of industrialized animal agriculture and factory farming in the United States. Farmed animals receive little compassion from the animal agriculture industry, and standard practice for injured, disabled, or sick animals is often euthanasia. The industry's economic model is such that it is simply not profitable to care for animals bred to be slaughtered. The Sanctuary operates at the heart of the epicenter because it hopes to address this injustice by providing an alternative option: rather than kill animals who can be saved, law enforcement, farmers, breeders, and others may surrender animals to the Sanctuary, so those animals may live out their lives in peace.

7. The Sanctuary is also a first responder when disaster strikes and impacts farmed animals, such as freeway accidents and natural disasters, and the Sanctuary's rescue and placement team regularly receives calls concerning animal rescue. Rescued animals are treated as individuals at the Sanctuary, and their unique needs are met and supported by a passionate network of sponsors in the community, including Missouri residents. Animals requiring unique or acute care are not discarded, but rather are embraced for their differences and treated with dignity and love.

8. The Sanctuary's community of sponsors, volunteers, staff, supporters and other agents deeply care for the wellbeing of rescued farmed animals within the Sanctuary, and mourn any death, particularly when untimely or avoidable. The Sanctuary's community understands it is facing a pervasive culture that devalues the lives of animals bred for food, so it invests emotionally, personally, and financially in the Sanctuary's mission and the lives of its residents. When injustices befall animals in the Sanctuary's care, it disturbs and injures everyone involved.

9. Defendant CURATORS OF THE UNIVERSITY OF MISSOURI, COLUMBIA is the governing body of the University of Missouri and the entity through which the University may sue and be sued pursuant to § 172.020, RSMo.

10. Defendant UNIVERSITY OF MISSOURI VETERINARY HEALTH CENTER (Vet Center) is a veterinary health services clinic and hospital operated by and through the

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

University of Missouri, Columbia, a public institution of higher education, located in Columbia, Boone County, Missouri. On information and belief, an individual or individuals at the Vet Center, while acting under color of law, authorized and committed the wrongful destruction of four healthy sheep for which Plaintiffs had a valid property interest under Missouri law, §§ 430.150, 430.165, 578.016, RSMo.

11. Defendant DR. JOAN COATES, D.V.M., on information and belief, served in the role of Interim Director of the Center when the events described herein took place in June 2023. Defendant Dr. Coates was acting under color of law as a supervisor of subordinate Dr. Jane Doe, D.V.M. who euthanized the sheep. For purposes of Plaintiffs' claims directed against Defendant Dr. Coates brought pursuant to 42 U.S.C. § 1983, Defendant Dr. Coates is named in her individual capacity.

12. Defendant DR. JANE DOE, D.V.M. while acting under color of law through her official duties, authorized and committed the wrongful destruction of four healthy sheep at the focus of this litigation. For purposes of Plaintiffs' claims directed against Defendant Doe, brought pursuant to 42 U.S.C. § 1983, Defendant Doe is named in her individual capacity.

**GENERAL ALLEGATIONS OF FACT**

13. On June 25, 2023, the Missouri Highway Patrol (MHP) responded to a tractor trailer accident involving 200 sheep on Highway 61, just south of Troy, St. Louis County, Missouri. The sheep were being transported to a slaughterhouse in Carbondale, Illinois when it crashed.

14. Sanctuary volunteers and staff who live in Missouri learned of the accident and immediately traveled to the crash site to offer their expertise in farmed animal recovery and care to law enforcement on site.

15. Upon arrival, the Sanctuary learned that dozens of sheep had already died at the scene, but MHP State Trooper J. L. Hughes had arranged for approximately 150 living sheep to be transported to a nearby temporary holding facility in Troy, St. Louis County, Missouri.

16. While Plaintiffs' agents were talking to Trooper Hughes, the owner of the temporary holding facility called Trooper Hughes to inform him that at least two sheep were

- 5 -
COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

1    suffering from life-threatening injuries. The holding facility owner advised Trooper Hughes that
2    he needed to euthanize the sheep by gunshot.

3    17. Trooper Hughes turned to Plaintiffs' agents and informed them that they could
4    have the sheep if they quickly picked them up from the temporary holding facility.

5    18. Plaintiffs' agents called Director Camp to tell her about Trooper Hughes' offer to
6    surrender the sheep to the Sanctuary. Director Camp agreed to the surrender and immediately
7    began her two-hour drive from the Sanctuary in Oxford, Iowa, to the location of the sheep in
8    Troy, Missouri.

9    19. Sanctuary agents departed the crash site for the temporary holding facility.

10   20. When Plaintiffs' agents arrived at the temporary holding facility, the owner of the
11   temporary holding facility asked Plaintiffs to take possession of six injured sheep, rather than two.
12   Plaintiffs agreed and took possession of all six sheep.



25   21. Director Camp loaded the sheep into her transport trailer and then took the sheep to
26   Defendants' veterinary hospital in Columbia, Missouri for care and treatment.

27   22. At intake, Director Camp paid $1,000 as a deposit for veterinary services to
28   Defendants for treatment of the sheep.

23. Late into the night, on Sunday, June 25, 2023, Dr. Celeste Morris, D.V.M., contacted Director Camp to discuss the possible treatment and recovery outcomes for two of the six sheep Director Camp had trusted to Defendants. Upon careful consideration of all information, Director Camp authorized the euthanasia of the two critically injured sheep.

24. Dr. Morris advised Director Camp that the four remaining sheep were great candidates for veterinary treatment and would all eventually thrive at the Sanctuary.

25. On June 26, 2023, at approximately 12:00 p.m., Defendants called Director Camp. Defendants requested payment of an invoice for additional veterinary services rendered for the sheep, as treatment costs had exceeded the initial deposit of $1,000 by $500.

26. Director Camp told Defendants she would be happy to pay the additional charges and requested an update on the status of the remaining sheep.

27. Defendants refused to provide an update on the status of the sheep, explaining that the "owner" had surfaced. Defendants told Director Camp they could not release veterinary health or treatment information about the sheep to Director Camp because she was not the "owner."

28. Defendants then repeated their request that Director Camp pay the $500 in additional charges for treatment of the sheep. Director Camp refused to pay the additional invoice unless Defendants would release the information related to the status of the sheep and necessity of the additional charges. Defendants repeated that they would not release the requested information.

29. Director Camp immediately understood that the owner could have directed Defendants to euthanize the four, healthy sheep. She was distraught, anxious, deeply disturbed, and emotionally destroyed by the thought that they sheep she had traveled so far to rescue, for whom she had treated and cared, could be dead.

30. On Tuesday, June 27, 2023, attorneys for Plaintiffs informed Defendants' General Counsel's Office that they intended to enforce their veterinary services lien against the owner of the surviving sheep, pursuant to §§ 430.150, 430.160, 430.165, 578.016, RSMo. Plaintiffs' counsel asked Defendants to confirm that the sheep were alive. Defendants again refused to release information about the status of the sheep to Plaintiffs or their counsel.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

31. On Wednesday June 28, 2023, Plaintiffs attempted to inspect the sheep, pursuant to their reading of Missouri's lien statute, § 578.016(1)(2), RSMo. They provided the hospital with thirty-minutes' notice of their intent to visit and inspect the sheep. Defendants told Plaintiffs over the phone something to the effect of, "Ok, we will see you in thirty minutes," indicating to Plaintiffs they would be permitted to view the sheep, and furthermore indicating that the sheep were still alive.

32. Upon arrival thirty minutes after that confirming phone call, Defendants' staff denied Plaintiffs access to the animals. Defendants were accompanied by two police officers.

33. On Wednesday, June 28, 2023, while in Columbia at Defendants' veterinary hospital, Plaintiffs asked to review Defendants' veterinary health and treatment records for the six sheep. Defendants refused and asked Plaintiffs to leave.

34. That same day, Defendants stated their intention to refund Plaintiffs and relieve them of financial liability.

35. Even if all financial costs were waived or refunded, Plaintiffs still incurred $2,674.77 in travel costs and staff time for their care and treatment of the animals.

36. On Thursday, June 29, 2023, Plaintiffs sued Matthew Hulsebus, the former owner of the sheep, and Defendants in state court, seeking enforcement of their lien claims and demanding return of the sheep through replevin.

37. On Friday, June 30, 2023, Plaintiffs' counsel spoke with counsel for Mr. Hulsebus who promised Plaintiffs' counsel he would find out if the sheep were alive or dead.

38. Mr. Hulsebus' attorney called Plaintiffs' counsel on Monday, July 3, 2023, and advised that Mr. Hulsebus had instructed Defendants to euthanize the four sheep seven days prior on Monday, June 26, 2023. In other words, Defendants killed the sheep and then refused to inform Plaintiffs of their death for one full week, causing Plaintiffs extraordinary distress, expense, and emotional injury.

39. For seven days, Director Camp and others associated with the Sanctuary suffered emotional injuries, including anxiety, distress, outrage, and general fear for the wellbeing of the

four surviving sheep which would have lived out their lives at the Sanctuary under Plaintiffs' care.

40. Director Camp suffered immensely in the days and weeks following that July 3 phone call. Her grief manifested as physical symptoms of anxiety, including depression and insomnia. She could not function without thinking of the sheep and feels continuing distress, grief, and depression when she considers how they died even though they were expected to fully recover.

41. Plaintiffs' replevin action was dismissed when Plaintiffs discovered the sheep were dead.

**MISSOURI LAW GIVING RISE TO PLAINTIFFS' POSSESSORY INTEREST**

42. Under § 430.165, RSMo, "Any animal lawfully impounded under the laws of this state or ordinances of any of its political subdivisions may be placed by the impounding officer in the care of any incorporated humane society or other responsible person designated by the impounding authority." § 430.165.1, RSMo (emphasis added).

43. "Any incorporated humane society or other person designated to care for an animal under [§ 430.165] shall be entitled to a lien on the animal for the reasonable cost of the care of the animal, as provided in sections 430.150 and 430.160, RSMo."

44. Furthermore, under § 578.016, RSMo, a duly authorized law enforcement official may impound any animal found outside the owned property of the animal if such animal shows evidence of neglect or abuse. The animals must be transported to an animal rescue for humane care and treatment and "not disposed of," until the expiration of a minimum of five days, during which time "the public shall have clear access to inspect or recover the animals." § 578.016.1(2).

45. The owner of impounded animals "shall be liable for reasonable costs for the care and maintenance of the animal," and the service provider shall "have a lien until the reasonable costs have been paid." § 578.016.2, RSMo.

46. Pursuant to the laws of the State of Missouri, on June 25, 2023, MHP Trooper Hughes lawfully seized and impounded approximately 150 sheep from an unknown owner.

- 9 -
COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

47. Trooper Hughes placed 144 of the impounded sheep in the custody of the owner of a temporary holding facility. He placed six of the impounded sheep in the custody of Plaintiffs because they appeared—in that moment—to be neglected and were in need of urgent veterinary care and treatment.

48. Both the owner of the temporary holding facility and Plaintiff Iowa Farm Sanctuary qualify as "responsible person[s] designated by the impounding authority," as that term is understood under § 430.165.

49. Plaintiff Iowa Farm Sanctuary is an "animal rescue," as that term is defined at § 578.016.1(2).

50. Missouri law also provides, that "Every person who shall keep, board, or train any horse, mule or other animal, shall, for the amount due therefor, have a lien on such animal . . . and no owner or claimant shall have the right to take any such property out of the custody of the person having such lien, except with his consent or on the payment of such debt; and such lien shall be valid against said property in the possession of any person receiving or purchasing it with notice of such claim." § 430.150, RSMo.

51. Plaintiffs were "persons who keep" animals that were lawfully impounded, giving rise to their lien and accordingly, "no owner or claimant [had] the right to take any such property out of the custody of the person having such lien, except with his consent or on the payment of such debt." § 410.150, RSMo.

52. On June 25 and 26, Plaintiffs had a valid possessory interest in six lawfully impounded sheep in the form of a lien under §§ 430.165, 578.016, 430.150, RSMo.

53. Defendants euthanized four of the six sheep without Plaintiffs' consent, in violation of §§ 430.165 and 578.016, RSMo because they did so before the expiration of the statutory waiting period of five days, over Plaintiffs' objection, and in the midst of a clear, known property dispute over the status of the sheep.

# FIRST CAUSE OF ACTION

**Violation of Fourth Amendment,
Denial of Right to Be Secure from Unreasonable Searches and Seizures,
as applied to the states under the Fourteenth Amendment (42 U.S.C. § 1983)
(Against All Defendants)**

54. Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

55. Under 42 U.S.C. § 1983, a party may seek injunctive relief and damages against a party who, under color of law of any state, subjects any person within the jurisdiction of the United States to a deprivation of any rights, privileges, or immunities secured by the Constitution and other laws.

56. The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV, § 1.

57. The Fourth Amendment protects against unreasonable seizures of property. A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property.

58. Plaintiffs had a valid property interest in the six impounded sheep, under Missouri's lien statutes. §§ 578.016.2, 430.150, 430.160, and 430.165, RSMo.

59. Defendants had a clear, explicit, non-discretionary duty to comply with Missouri's lien statutes and delay euthanizing the sheep until the property dispute had been resolved. §§ 578.016, 430.150, 430.160, and 430.165, RSMo.

60. Defendant Dr. Jane Doe was acting under color of state law based on her official duties through her position at the Vet Center when she violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures of their property by unreasonably seizing and destroying the surviving sheep, when she knew or should have known there was a property dispute at issue.

61. Defendant Dr. Jane Doe willfully and intentionally euthanized the sheep, permanently depriving Plaintiffs of their property.

62. Defendant Interim Director Dr. Coates was acting under color of state law based on her official duties through her position at the Vet Center when her subordinate, Dr. Jane Doe, violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures of their property through euthanizing the surviving sheep without Plaintiffs' consent.

63. Defendant Dr. Coates failed to adequately train and supervise staff and to implement procedures to ensure adherence to Missouri law, including lien statutes.

64. Defendant Dr. Coates showed deliberate indifference to Plaintiffs' potential injury, and her failure to take adequate remedial action to prevent the destruction of the sheep proximately caused Plaintiffs' injuries.

65. Defendants acted abruptly and summarily in their decision to euthanize the sheep at Mr. Hulsebus's direction even though Plaintiffs brought the sheep to the Vet Center at MHP's direction, Plaintiffs had paid Defendants a deposit for their care, and Plaintiffs held a possessory interest in the impounded sheep.

66. Defendants gambled they were correct in their assumption that Mr. Hulsebus had jurisdiction over the sheep, when in fact he did not. Instead, Plaintiffs suffered an unlawful seizure and deprivation of the sheep in Plaintiffs' care.

67. As a direct and proximate consequence of Defendants' acts, Plaintiffs suffered and continue to suffer injuries in the wake of the avoidable death of sheep they had a property interest in and are entitled to declaratory relief, monetary damages, and attorney's fees in accordance with proof for their property and other injury to their person.

68. Absent judicial intervention, Defendants will continue to violate their statutory duties under Missouri law resulting in preventable deaths of animals and causing severe emotional distress of animal rescues attempting to exercise their rights and lien claims.

69. In doing the acts of which Plaintiffs complain, Defendants Dr. Coates and Dr. Jane Doe's conduct was reckless or callously indifferent to Plaintiffs' federally protected rights to be free of unreasonable seizure of property, and accordingly, Plaintiffs are entitled to punitive damages. *Smith v. Wade*, 461, U.S. 30, 56 (1983).

70. Plaintiffs also request injunctive relief against Defendant Vet Center.

71. Plaintiffs cannot be made whole from compensatory damages alone due to the severity of the deprivation and emotional distress involved with the wrongful killing of Plaintiffs' unique, disputed property. Rather, Defendants must be trained on the importance of adhering to Missouri law and lien statutes affecting animals receiving treatment at the Vet Center to prevent future constitutional violations.

72. This Court has authority to issue declarations of rights having the force of final judgments in accordance with Federal Rules of Civil Procedure, Rule 57.

73. This Court has authority to issue injunctive relief in accordance with Federal Rules of Civil Procedure, Rule 65 to compel Defendants to comply with state and federal law in the future.

74. This Court has authority to remedy Defendants' violations of the Fourth Amendment of the Constitution through compensatory, emotional, and punitive damages under 42 U.S.C. § 1983, and without this Court's intervention, Plaintiffs cannot be made whole.

## SECOND CAUSE OF ACTION

### Denial of Procedural Due Process
### Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983)
### (Against All Defendants)

75. Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

76. The Fourteenth Amendment to the U.S. Constitution provides, "[n]o State…shall deprive any person of life, liberty, or property without due process of law, nor deny any to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

77. The Fourteenth Amendment Due Process clause includes a right to both procedural due process and substantive due process.

78. Procedural due process rights include the opportunity to be heard at a meaningful time and in a meaningful manner in certain circumstances, including before the deprivation of a right protected by the Constitution.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

79. As the valid lien holder for the care of animals, Plaintiffs had a legitimate property interest under Missouri law, and Defendants knew or should have known about Plaintiffs' lien for care of the animals. §§ 430.165, 430.150, 578.016, RSMo.

80. When Mr. Hulsebus reclaimed his possessory interest in the animals, Defendants knew or should have known that a dispute over the ownership of the sheep had arisen.

81. Defendants failed to comply with their mandatory duties to prevent the destruction of the sheep, until the procedural due process safeguards for notice and opportunity for a hearing were provided, as required by §§ 430.160, 430.150, and 578.016.1(2), RSMo.

82. Defendant Dr. Jane Doe was acting under color of state law when she violated Plaintiffs' procedural due process right to notice and opportunity to be heard before permanently destroying property subject to a property dispute, per §§ 430.160, 430.150, and 578.016.1(2), RSMo.

83. As a result of Defendant Dr. Jane Doe's disregard for Plaintiffs' rights, Plaintiffs were unlawfully denied their due process rights and property rights alleged herein.

84. Defendant Dr. Coates was acting under color of state law when her subordinate, Dr. Jane Doe, willfully destroyed property subject to a property dispute without a hearing or any of the other procedural safeguards provided by Missouri law, per §§ 430.160, 430.150, and 578.016.1(2), RSMo.

85. Defendant Dr. Coates failed to adequately train and supervise staff and to implement procedures to ensure adherence to Missouri law, including lien statutes which provide for procedural rights.

86. Defendant Dr. Coates showed deliberate indifference to Plaintiffs' impending injury and her failure to take adequate remedial action to prevent the destruction of the sheep proximately caused Plaintiffs injuries.

87. As such, Defendants violated Plaintiffs' procedural due process rights under the Fourteenth Amendment of the United States Constitution, subjecting Defendants to liability under 42 U.S.C. § 1983.

- 14 -
COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

88. Absent judicial intervention, Defendants will continue to violate their statutory duties resulting in preventable deaths of animals and severe emotional distress of those attempting to exercise their rights and lien claims.

89. Plaintiffs have been damaged by Defendants' unconstitutional acts and are therefore entitled to declaratory relief, monetary damages, and attorneys' fees in accordance with proof.

90. In doing the acts of which Plaintiffs complain, Defendants Dr. Jane Doe and Dr. Coates's conduct was reckless or callously indifferent to Plaintiffs' federally protected rights to adequate due process of law, and accordingly, Plaintiffs are entitled to punitive damages. *Smith v. Wade*, 461, U.S. 30, 56 (1983).

91. Plaintiffs also request injunctive relief against Defendant Vet Center.

92. Plaintiffs cannot be made whole from compensatory damages alone due to the severity of the deprivation and emotional distress involved with the wrongful killing of Plaintiffs' unique, disputed property. Rather, Defendants must be trained on the importance of adhering to Missouri law and lien statutes affecting animals receiving treatment at the Vet Center to prevent future constitutional violations.

93. This Court has authority to issue declarations of rights having the force of final judgments in accordance with Federal Rules of Civil Procedure, Rule 57.

94. This Court has authority to issue injunctive relief in accordance with Federal Rules of Civil Procedure, Rule 65 compelling Defendants to comply with Missouri law and lien statutes, protecting the due process rights of Plaintiffs and others under the U.S. Constitution.

95. This Court has authority to remedy Defendants' violations of the Constitution through compensatory, emotional, and punitive damages under 42 U.S.C. § 1983, and without this Court's intervention, Plaintiffs cannot be made whole.

# THIRD CAUSE OF ACTION

### Violation of Substantive Due Process
### Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983)
### (Against All Defendants)

96. Plaintiffs refer to and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

97. The Fourteenth Amendment to the U.S. Constitution provides, "[n]o State…shall deprive any person of life, liberty, or property without due process of law, nor deny any to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

98. The Fourteenth Amendment Due Process clause includes a right to both procedural due process and substantive due process.

99. Substantive due process rights protect against outrageous and conscious shocking government interference with fundamental constitutional rights.

100. Defendant Dr. Jane Doe was acting under color of state law when she irrationally, and in violation of Missouri lien statutes, deprived Plaintiffs of their property interest by euthanizing four recovering sheep subject to a property dispute.

101. Defendants offended judicial notions of fairness and human dignity when they denied information to Plaintiffs regarding the wellbeing of the sheep, provided false and contradictory information to Plaintiffs, and unlawfully euthanized the sheep which Plaintiffs brought to the Vet Center by the authority of an impounding officer.

102. Dr. Jane Doe acted intentionally and recklessly by taking the lives of the sheep, when she knew or should have known the sheep were the center of a property dispute.

103. Dr. Jane Doe's actions are shocking to the contemporary conscience.

104. Defendant Dr. Coates was acting under color of state law when she demonstrated deliberate indifference to the actions of her subordinate, Dr. Jane Doe, which surpasses negligent disregard.

105. Defendant Dr. Coates failed to adequately train and supervise staff and to implement procedures to ensure adherence to Missouri law, in violation of Plaintiffs' substantive due process rights.

106. Defendant Dr. Coates's actions are shocking to the contemporary conscience.

107. Plaintiffs' claims are directed at these individuals and at an institution that is tasked with caring for animals and adhering to Missouri law but failed to do so. As such, Defendants' actions were irrational, and resulted in a violation of Plaintiffs' substantive due process rights.

108. Absent judicial intervention, Defendants and other Vet Center leadership may continue to demonstrate deliberate indifference resulting in preventable deaths of animals and severe emotional distress of those attempting to exercise their rights and lien claims.

109. Plaintiffs have been damaged by these unconstitutional acts and are therefore entitled to declaratory relief, monetary damages, and attorney's fees in accordance with proof.

110. In doing the acts of which Plaintiffs complain, Defendant Dr. Jane Doe and Dr. Joan Coates's conduct was reckless or callously indifferent to Plaintiffs' federally protected rights to adequate due process of law, and accordingly, Plaintiffs are entitled to punitive damages. *Smith v. Wade*, 461, U.S. 30, 56 (1983).

111. Plaintiffs also request injunctive relief against Defendant Vet Center.

112. Plaintiffs cannot be made whole from compensatory damages alone due to the severity of the deprivation and emotional distress involved with the wrongful killing of Plaintiffs' unique, disputed property. Rather, Defendants must be trained on the importance of adhering to Missouri law and lien statutes affecting animals receiving treatment at the Vet Center.

113. This Court has authority to issue declarations of rights having the force of final judgments in accordance with Federal Rules of Civil Procedure, Rule 57.

114. This Court has authority to issue injunctive relief in accordance with Federal Rules of Civil Procedure, Rule 65 compelling Defendants to comply with Missouri law and lien statutes, protecting the due process rights of Plaintiffs and others under the U.S. Constitution.

115. This Court has authority to remedy Defendants' violations of the Constitution through compensatory, emotional, and punitive damages under 42 U.S.C. § 1983, and without this Court's intervention, Plaintiffs cannot be made whole.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment in their favor on every claim for relief set forth above, and award them relief, including but not limited to, the following:

a. Declaring that Plaintiffs had a valid possessory and/or property interest in the six impounded sheep on June 25 and 26, 2023, pursuant to Missouri law;

b. Declaring that Defendants violated Plaintiffs' constitutional rights to be free from unreasonable search and seizure under the Fourth Amendment and to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution;

c. Enjoining Defendants to comply with all laws and statutes concerning disputed property interests and liens for the care of animals in Missouri;

d. Enjoining Defendants to develop and implement training for employees, contractors, and agents to ensure compliance with all applicable statutes, including but not limited to §§ 430.150, 430.160, and 430.165, 578.016, RSMo, as part of Defendants' standard operating procedure for veterinary care;

e. Awarding compensatory damages for past expenses related to the rescue, transportation, cost, and care of six impounded sheep and the emotional distress suffered by Plaintiffs as a result of Defendants' misconduct;

f. Awarding general and punitive damages for fear, worry, annoyance, disturbance, inconvenience, mental anguish, emotional distress, and for such other and further relief as the Court shall deem proper, all according to proof;

g. Awarding Plaintiffs their reasonable attorneys' fees and costs; and,

h. Other and further relief as the Court may deem just and proper.

DATED: August 20, 2024          Respectfully submitted,

<u>*/s/ Jessica L. Blome*</u>
JESSICA L. BLOME
LILY A. RIVO
Greenfire Law, PC
*Attorneys for Plaintiffs*